Robert James PENICK, Petitioner,

v.

Maria C. PENICK, Respondent.

No. C–7610.

Supreme Court of Texas.

Dec. 14, 1988.

Rehearing Overruled Feb. 21, 1990.

Edward E. Lindsay, Houston, for petitioner.

Donald W. Rogers, Jr., Houston, for respondent.

## OPINION

ROBERTSON, Justice.

This divorce case concerns the proper measure for reimbursement when community funds are used to pay a prenuptial, purchase money debt. The specific issue is whether tax benefits derived by the community estate from a spouse's separate property may be considered and offset against the sum advanced by the community estate to reduce the principal of the debt on the separate property. In reversing the judgment of the trial court, the court of appeals held that the proper measure for reimbursement in this situation was to return to the community estate the actual amount expended on the principal of the separate property debt without consideration of offsetting benefits. 750 S.W.2d 247. We hold that the trial court properly considered offsetting benefits in determining the measure of reimbursement here and, accordingly, we reverse the judgment of the court of appeals and affirm the judgment of the trial court.

Robert and Maria Penick were married on March 13, 1975. At the time of marriage Robert owned several residential rental properties. During the marriage Robert maintained and managed these

properties. The community estate also purchased a few rental properties, but 90% of the community estate's income was derived from Robert's separate rental property.

Prior to trial, Robert and Maria entered into a written stipulation concerning Robert's separate real property. As a part of this stipulation, the parties agreed that the community estate had paid $104,500 to reduce the principal indebtedness on Robert's separate real property. Supported by the parties' joint tax returns, Robert testified at trial that the tax benefits to the community estate from the depreciation of his separate property exceeded the $104,500 expended by the community to reduce his separate property debt.

In determining the community property subject to division, the trial court concluded that no reimbursement was due the community because the community estate had on balance received a benefit, a reduction in its tax liability, by taking the depreciation of Robert's separate property. Maria appealed, arguing that the law of reimbursement did not permit Robert to offset any amount against those dollars paid by the community estate to reduce the principal of Robert's separate property debt. The court of appeals agreed that the community should be reimbursed for every dollar contributed to the principal of Robert's separate property debt, and so it remanded the cause to the trial court for a proper division of the community property, giving due regard to the $104,500 reimbursement owed the community estate.

The issue in this case is whether the trial court erred in considering the tax benefits received by the community estate through the depreciation of Robert's separate property as an offset against the amount paid by the community on the principal of Robert's prenuptial debt. The rules generally applicable to reimbursement claims for prenuptial debts and particularly the proper role for offsetting benefits are unsettled. *See generally,* Oldham, *Texas Reimbursement Law,* in State Bar of Texas, Advanced Family Law Course (1988); Koons & Holmes, *Charac-*

*terization and Reimbursement,* in State Bar of Texas, Advanced Family Law Course (1987); Cook & Dudley, *Characterization, Tracing and Reimbursement,* in State Bar of Texas, Marriage Dissolution (1987); Weekley, *Reimbursement Between Separate and Community Estates—The Current Texas View,* 39 Baylor L.Rev. 945 (1987); Heard, Orsinger, & Strieber, *Characterization of Property and Reimbursement,* in State Bar of Texas, Advanced Family Law Course (1986); Smith & Smith, *Reimbursement in Divorce Cases,* in State Bar of Texas, Marriage Dissolution (1984); Smith, *Reimbursement,* in State Bar of Texas, Advanced Family Law Course (1982). The confusion is, in part, attributable to this court's writings in *Dakan v. Dakan,* 125 Tex. 305, 83 S.W.2d 620 (1935), and *Colden v. Alexander,* 141 Tex. 134, 171 S.W.2d 328 (1943).

*Dakan* did not expressly consider the role of offsetting benefits in evaluating a claim for reimbursement. It simply provided that reimbursement for a purchase money advance should be at cost to the contributing estate. *Dakan,* 83 S.W.2d at 628. Eight years later in *Colden v. Alexander,* this court indicated that consideration of offsetting benefits was proper when measuring a reimbursement claim. Neither opinion is a paragon of clarity as the following oft-cited passage from *Colden* demonstrates:

> Of course, where the husband purchases land on credit before marriage, and pays the purchase money debt after marriage out of community funds, equity requires that the community estate be reimbursed. Under our law, the income during marriage from the estate of either the husband or the wife is community. The rule of reimbursement, as above announced, is purely an equitable one. Such being the case, we think it would follow that interest paid during coverture out of community funds on the prenuptial debts of either the husband or the wife on land, and taxes, would not even create an equitable claim for reimbursement, unless it is shown that the expendi-

tures by the community are greater than the benefits received.

*Colden,* 171 S.W.2d at 334 (citations omitted).

*Dakan* and *Colden* have spawned a dizzying array of alternative or conflicting principles and presumptions for evaluating a claim for reimbursement. From the cases interpreting *Dakan* and/or *Colden,* we have gleaned the following rules applicable to purchase money reimbursement claims. As a threshold requirement, it is typically held that the contributing estate need not show enhancement or the benefit of its contribution as a condition of reimbursement. *See, e.g., Nelson v. Nelson,* 713 S.W.2d 146 (Tex.App.—Texarkana 1986, no writ); *Fyffe v. Fyffe,* 670 S.W.2d 360 (Tex.App.—Texarkana 1984, writ dism'd w.o.j.). Instead, the payment by one marital estate of the debt of another creates a prima facie right of reimbursement.

From this general rule, some courts have carved an exception regarding interest, taxes and insurance. These courts indulge in a presumption that reimbursement is not due absent proof that the amount paid for these expenses was greater than the benefit received by the contributing estate. *See, e.g., Cook v. Cook,* 665 S.W.2d 161 (Tex.App.—Fort Worth 1983, writ ref'd n.r. e.); *Hawkins v. Hawkins,* 612 S.W.2d 683 (Tex.Civ.App.—El Paso 1981, no writ). This exception to the general rule is traceable to *Colden v. Alexander* and in application requires the party seeking reimbursement to show that the amount paid for taxes, interest and insurance exceeded the benefits received by the contributing estate.

Some courts, however, have rejected any concept of offsetting benefits, requiring instead that the contributing estate be fully reimbursed for all funds paid on the purchase money debt of another estate. *See, e.g., Hilton v. Hilton,* 678 S.W.2d 645 (Tex. App.—Houston [14th Dist.] 1984, no writ); *Brooks v. Brooks,* 612 S.W.2d 233 (Tex.Civ. App.—Waco 1981, no writ); *Pruske v. Pruske,* 601 S.W.2d 746 (Tex.Civ.App.— Austin 1980, writ dism'd w.o.j.). Still oth-

ers have made the exception the rule, drawing no distinction between how the community funds were used and permitting reimbursement only upon a showing that expenditures exceeded benefits. *See, e.g., Allen v. Allen,* 704 S.W.2d 600 (Tex.App.— Fort Worth 1986, no writ); *Snider v. Snider,* 613 S.W.2d 8 (Tex.Civ.App.—Dallas 1981, no writ); *Klein v. Klein,* 370 S.W.2d 769 (Tex.Civ.App.—Eastland, 1963, no writ).

The present writing of the court of appeals preserves many of the distinctions drawn in previous reimbursement cases. The court distinguishes the present case from those in which community funds were used to pay interest or taxes, thereby giving tacit approval to those cases which have found it appropriate to consider offsetting benefits when the community has paid certain separate property expenses other than the principal of the separate property debt. The court of appeals also distinguishes this case from those in which the community was alleged to have provided for improvements on separate property or to have provided time, talent and labor to benefit separate property. This disclaimer refers to the last two writings by this court on the subject of reimbursement, *Anderson v. Gilliland,* 684 S.W.2d 673 (Tex.1985), and *Jensen v. Jensen,* 665 S.W.2d 107 (Tex.1984).

Of these two cases *Anderson* is more closely analogous to our present case. It concerned the community's reimbursement claim for funds expended for capital improvements on a spouse's separate property. There, as here, we were faced with conflicting or inconsistent principles for evaluating the community's claim for reimbursement. Three distinct rules had evolved. In resolving this conflict we emphasized the equitable nature of the claim and selected what we considered the fairest measure, holding "that a claim for reimbursement for funds expended by an estate for improvements to another estate is to be measured by the enhancement in value to the benefited estate." *Anderson,* 684 S.W.2d at 675.

Noting that the correct measure for reimbursement under the present circumstances was unclear, the court of appeals held that the best rule was to reimburse the community for every dollar advanced on the principal of Robert's prenuptial, purchase money debt. The court of appeals further rejected consideration of any offsetting benefits under these circumstances. The court wrote that community funds used to pay the purchase price or to discharge encumbrances against separate property, as distinguished from the community's payment of taxes or interest on separate property should be reimbursed "without the necessity of proof that the expenditures exceeded benefits received by the community." 750 S.W.2d at 250.

This "dollar for dollar" reimbursement rule is inconsistent with the equitable approach we advocated in *Anderson*. The court of appeals, however, distinguishes *Anderson* because it concerned reimbursement for a capital improvement to separate property rather than reimbursement for a prenuptial, purchase money debt. A distinct and different set of rules have evolved for evaluating a reimbursement claim for capital improvements as opposed to one for purchase money.

Why we should have two distinct sets of rules for two very similar claims for reimbursement is another matter which is not entirely clear. One commentator has observed that there is no logical reason for calculating reimbursement differently in capital improvement cases and in purchase money cases and attributes the development of different rules to historical accident. Weekley, *Reimbursement Between Separate and Community Estates—The Current Texas View*, 39 Baylor L.Rev. 945, 974 (1987). We are likewise at a loss to make a meaningful distinction between these two types of reimbursement. We view the advancement of funds by one marital estate to another under either transaction, payment of a purchase money debt or as a capital improvement, as essentially identical and therefore subject to the same kind of measurement.

Having disregarded the traditional dichotomy between reimbursement claims for purchase money debts and capital improvements, we turn again to the holding of the court of appeals. According to the court of appeals, the correct measure for reimbursement here is to return to the community the actual amount advanced to reduce the principal indebtedness on the separate property without regard to the benefits received in return by the community estate. Because the trial court considered the tax benefits realized by the community estate from the depreciation of Robert's separate property and offset this benefit against those community funds expended on the separate property, the court of appeals concluded that the trial court had abused its discretion. We disagree.

The outright rejection of offsetting benefits is inconsistent with the equitable nature of a claim for reimbursement. Most recently in *Jensen v. Jensen,* we embraced the concept· of offsetting benefits. In *Anderson v. Gilliland,* we did not consider or mention offsetting benefits, but did emphasize that reimbursement is an equitable claim. As such, "a court of equity is bound to look at all the facts and circumstances and determine what is fair, just, and equitable." 27 Am.Jur.2d, *Equity* § 102 at 624 (1966). The rule applied here by the court of appeals does not serve equity because it forecloses consideration of some of the facts and circumstances material to the reimbursement claim.

Admittedly it is difficult to announce a single formula which will balance the equities between each marital estate in every situation and for every kind of property and contribution. A useful analogy between an action for quantum meruit and a claim for reimbursement has been suggested:

The equitable doctrine of quantum meruit is based upon the principle that one receiving benefits which are unjust for him to retain ought to make restitution or pay the value of the benefit to the party contributing the benefit. *Baldwin v. Smith,* 586 S.W.2d 624, 632 (Tex.Civ. App.—Tyler 1979) *rev'd on other grounds,* 611 S.W.2d 611 (Tex.1980).

Applied to claims for reimbursement, the doctrine might have three elements: (1) an estate has contributed to another estate, (2) the contributing estate has not received a quid pro quo, and (3) the benefited estate has thereby been unjustly enriched. Thus, achievement of equity between marital estates, a goal the Texas Supreme Court aspires to attain in *Anderson v. Gilliland*, would seem to necessitate a consideration of offset.

Koons and Holmes, *Characterization and Reimbursement*, in State Bar of Texas, Advanced Family Law Course 48–9 (1987).

In the final analysis, great latitude must be given to the trial court in applying equitable principles to value a claim for reimbursement. As we said in *Dakan*, an equitable claim for reimbursement is not merely a balancing of the ledgers between the marital estates. *Dakan*, 83 S.W.2d at 627. The discretion to be exercised in evaluating a claim for reimbursement is equally as broad as that discretion subsequently exercised by the trial court in making a "just and right" division of the community property. Tex.Fam.Code Ann. § 3.63 (Vernon Supp.1988). In the present case the trial court did not abuse its discretion by considering the tax benefits returned to the contributing community estate and the effect the depreciation deduction had on the value of Robert's separate property.

The judgment of the court of appeals is reversed and the judgment of the trial court is affirmed.