Affirmed and Memorandum Opinion
filed June 24, 2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00012-CV



Rickey B.
Taylor, Appellant 

v.

Katrina Taylor,
Appellee 



On Appeal from
the 506th District Court

Grimes County, Texas

Trial Court
Cause No. 2353



 

MEMORANDUM OPINION 

This appeal arises from a final divorce decree in
which the husband challenges the trial court’s property division as well as its
award of a community-estate reimbursement from the husband’s separate estate
for funds expended to discharge all or part of a liability secured by a lien on
the husband’s separate, real property.  The husband also argues that the trial
court erred in failing to offset the reimbursement.  We affirm.

I.  Factual and Procedural
Background

Appellant Rickey B. Taylor and appellee Katrina
Taylor were married in 1998.  Prior to their marriage, Rickey paid $2,500 to enter
into a lease agreement with an option to purchase a home.  Although the parties
agree that Katrina gave Rickey the money for the lease, the parties testified
that the lease was in Rickey’s name only.  

The following year, after Rickey and Katrina were
married, Rickey exercised the purchase option.  A deed was executed in Rickey’s
name, and Rickey assumed payments on the home.  In 2001, Rickey and Katrina took
out a home equity loan for $71,990.62.  Katrina testified that at the time
Rickey entered into the lease-purchase agreement, the home was valued at
$71,000.

In February 2005, Rickey was incarcerated on charges of
sexual misconduct involving Katrina’s daughter.  Katrina testified that she continued
to live in the home and paid the monthly expenses associated with upkeep of the
home in order to avoid foreclosure.  These expenses, when tallied, amounted to
roughly $737 each month.  Rickey confirmed that since his incarceration, he had
not contributed to any payments for the home nor had he used the home.  

Rickey filed for divorce in December 2005; Katrina
filed a counter-petition for divorce.  At trial, Rickey asked the court to
award him all of the equity in the home and to award the property to him as
separate property.  Katrina asked for the trial court to determine that the
home was community property with reimbursement or economic contribution to the
community for Katrina’s upkeep of the home during Rickey’s incarceration.  

At the conclusion of trial, the court found that the home
was Rickey’s separate property.  The trial court awarded Katrina a contribution
allowance of $425 for each month from February 2005, when Rickey was
incarcerated, to May 2008, the time of trial.  On this basis, the trial court
awarded Katrina an equitable lien against Rickey’s separate property at $425
per month for a period of three years and three months.  The trial court ruled
that Katrina could continue to reside in the home for six additional months as
long as she maintained the home.  The trial court awarded Katrina $425 for each
month she continued to live in the home until the home was sold or she moved
from the premises.  

The trial court entered a final divorce decree, holding
Rickey liable for the balance due on the home equity loan.  The trial court
found that the community estate was entitled to reimbursement from Rickey’s
separate estate for funds expended to discharge all or part of a liability
secured by the lien on Rickey’s separate property, the home, and awarded Katrina
a judgment of $19,550 against Rickey for reimbursement to the community estate. 
To secure the payment of the judgment, the trial court granted Katrina an
equitable lien on the home until the judgment was paid in full.  

In a supplemental record, the trial court filed
findings of fact and conclusions of law.  The trial court found that (1) the home
is Rickey’s separate property, (2) the home equity loan was a community debt,
and (3) community funds were expended to pay Rickey’s separate property
obligation, for which the community should be reimbursed.  The trial court also
found that the balance due on the home equity loan at the time of trial was
$63,996.75.

Rickey challenges the trial court’s award to Katrina,
claiming that the trial court erred in awarding reimbursement to the community
estate from Rickey’s separate estate because there is no evidence of
enhancement value.  Rickey also claims that the trial court did not offset the
reimbursement award for the benefits actually received by the community estate
and that the trial court erred in awarding Katrina over one hundred percent of
the assets of the community estate in awarding Katrina $19,550.

II.        Analysis

A.        The Trial Court’s Findings of
Fact and Conclusions of Law

As a preliminary matter, we address Rickey’s fourth
issue in which he asserts harmful error from the trial court’s failure to file
findings of fact and conclusions of law pertaining to the trial court’s
division of community property.  This court abated Rickey’s appeal and directed
the trial court to correct its error.  Thereafter, the trial court provided its
findings of fact and conclusions of law and additional findings and conclusions
in a supplemental clerk’s record.  Therefore, Rickey’s fourth issue is now
moot.

B.        Division of Property

In his third issue, Rickey argues that the trial
court abused its discretion in its division of the property, characterizing the
division as awarding over one hundred percent of the net assets of the
community estate to Katrina.  According to Rickey, the trial court awarded him
a value of $3,075.00 in personalty and ordered him to pay the entire balance
due on the home equity loan ($63,996.75), but awarded Katrina a value of $9,900
in personalty in addition to the entirety of the community-reimbursement claim
for $19,550.  Rickey does not contest the personalty awarded to each party.  According
to Rickey, $45,000 of the home equity loan was used to pay the purchase money
debt on the home, requiring him to pay over $18,996.75 in community debt. 
According to Rickey’s calculations, Katrina received a net total of $29,450 in
community assets, which he characterizes as over one hundred percent of the
community estate, and he claims to have received negative $15,921.75.

In a divorce decree, the trial court “shall order a
division of the estate of the parties in a manner that the court deems just and
right, having due regard for the rights of each party and any children of the
marriage.”  Tex. Fam. Code Ann. §
7.001 (Vernon 2006).  The trial court has broad discretion in dividing the
estate of the parties; we review a trial court’s division for an abuse of
discretion.  Murff v. Murff, 615 S.W.2d 696, 698 (Tex. 1981).  We
presume the trial court did not abuse its discretion in dividing the estate,
and we will not disturb the division on appeal unless the appellant
demonstrates a clear abuse of discretion.  Id.  

The test for abuse of discretion is whether the trial
court acted arbitrarily or unreasonably, or whether it acted without reference
to any guiding rules or principles.  Worford v. Stamper, 801 S.W.2d 108,
109 (Tex. 1990); Knight v. Knight, 301 S.W.3d 723, 728 (Tex.
App.—Houston [14th Dist.] 2009, no pet.).  The trial court’s ultimate division
need not be equal, so long as it is equitable and so long as the court has some
reasonable basis for an unequal division of the property.  See Robles v.
Robles, 965 S.W.2d 605, 621 (Tex. App.—Houston [1st Dist.] 1998, pet.
ref’d); Zieba v. Martin, 928 S.W.2d 782, 790 (Tex. App.—Houston [14th
Dist.] 1996, no writ) (op. on reh’g).  A trial court does not abuse its
discretion if the trial court bases its decision on conflicting evidence or when
there exists some evidence of a substantial and probative character to support
the trial court’s division.  Zeiba, 928 S.W.2d at 787.  Under the
abuse-of-discretion standards, the legal and factual sufficiency of the
evidence are not independent grounds for error, but are merely relevant factors
in assessing whether the trial court abused its discretion.  Knight, 301
S.W.3d at 728.  

Rickey offered an exhibit at trial pertaining to his
proposed property division.  That exhibit is not included in the record before
this court; however, Rickey testified to the value of many items on the list.  Katrina
testified that she did not assign value to any items listed in her proposed
property division offered at trial, but she testified that she did not contest
the values of the items in Rickey’s list except for the home.  Likewise,
Katrina’s proposed property division is not included in this record.  The trial
court’s findings indicate that the property division was disproportionate based
on the parties’ conduct.  The trial court had evidence and testimony that
Katrina paid for the home, expenses for the home, and property taxes with money
taken from her 401(k) account and sold items including motorcycles to make
payments on the home during the entire time Rickey was incarcerated.  It is
undisputed that from the time of Rickey’s incarceration until the time of trial,
Rickey had not contributed any money towards the monthly house payment,
insurance, or taxes associated with the home.  

The trial court’s findings indicate that the trial
court ordered a disproportionate division of property because of the conduct of
the parties.  In its additional conclusions of law, the trial court indicated
that Rickey was at fault for the dissolution of the marriage as a result of his
conviction for sexual assault against Katrina’s child.  In an appeal from a
bench trial, we review de novo the trial court’s conclusions of law as legal
questions and will uphold them on appeal if the judgment can be sustained on
any legal theory supported by the evidence.  See BMC Software Belgium v.
Marchand, 83 S.W.3d 789, 794 (Tex. 2002).  When, as in this case, the
appellate record contains a complete reporter’s record, we review the trial
court’s findings of fact under the same standards for legal and factual
sufficiency that govern our review of jury’s findings.  See Catalina
v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994); CA Partners v. Spears,
274 S.W.3d 51, 69 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).  If there
is more than a scintilla of fact supporting a finding of fact, we will overrule
a legal-sufficiency challenge.  CA Partners, 274 S.W.3d at 69.  In
reviewing a factual-sufficiency challenge, we consider all evidence and set
aside a finding only if it is so against the great weight and preponderance of
the evidence as to be clearly wrong and unjust.  Id.

In exercising its discretion, the trial court may
consider many factors including a spouse’s fault, the disparity of incomes or
of earning capacities, the spouses’ capacities and abilities, benefits which
the party-not-at-fault would have derived from continuation of the marriage,
business opportunities, education, relative physical conditions, relative
financial conditions and obligations, disparity of ages, size of separate
estates, and the nature of the property.  Murff, 615 S.W.2d at 698–99.  The
trial court did not abuse its discretion in considering Rickey’s incarceration as
contributing to his fault in the dissolution of his marriage.  See id. The
trial court did not abuse its discretion in considering Rickey’s conduct in failing
to contribute to the expenses associated with his home and Katrina’s efforts to
maintain payments on the home during his incarceration.  See id.  Likewise,
although Rickey states that Katrina was awarded over one hundred percent of the
community assets, the trial court did not award Katrina any ownership interest
in, or future benefits from, Rickey’s separate property (the home) for which
some of the community funds were expended during his incarceration.  See Hailey
v. Hailey, 176 S.W.3d 374, 383 (Tex. App.—Houston [1st Dist.] 2004, no pet.)
(rejecting similar complaint on the basis that wife who received more community
assets also received the community estate’s considerable debt).  Rickey has not
demonstrated that the trial court’s evaluation of the evidence resulted in an
abuse of discretion as required to overturn its property division.  See Murff,
615 S.W.2d at 698–99.  Given the wide latitude and discretion vested in the
trial court, we cannot conclude on this record that the trial court abused its
discretion in dividing the community estate.  We therefore overrule Rickey’s
third issue.

C.        Reimbursement to
the Community Estate and Offset for Reimbursement

In his first issue, Rickey asserts the trial court
erred in requiring him to reimburse the community estate for $19,550 when he
claims there is no evidence to support that his separate property has received any
benefit or enhancement from the community estate.  In his second issue, Rickey
claims the trial court erred in failing to offset the reimbursement by the
benefits Katrina actually received.  

The trial court entered findings indicating that the
community estate was entitled to reimbursement from Rickey’s separate estate
for funds expended to discharge all or part of the community liability home
equity loan secured by a lien on Rickey’s separate property.  To satisfy the
disproportionate division of the community estate in favor of Katrina and to
reimburse the community estate, the trial court awarded an equitable lien in
favor of Katrina against Rickey’s home in the amount of $19,550.  

Reimbursement is an equitable right that arises when
the funds or assets of one estate are used to benefit and enhance another
estate without itself receiving some benefit.  Vallone v. Vallone, 644
S.W.2d 455, 458–59 (Tex. 1982).  A party may bring a claim for reimbursement of
payments by one marital estate to satisfy unsecured debt liabilities of another
marital estate.  Tex. Fam. Code Ann.
§ 3.408(b)(1) (Vernon 2006).  The party claiming the right of reimbursement has
the burden of pleading and proving that the expenditures were made and that
they are reimbursable.  Vallone, 644 S.W.2d at 458–59.  The
burden also includes the responsibility to prove the offsetting benefits to the
payor estate.  Zieba, 928 S.W.2d at 788.  “[T]he payment by one
marital estate of the debt of another creates a prima facie right of
reimbursement.”  Penick v. Penick, 783 S.W.2d 194, 196 (Tex. 1988).  

The trial court shall determine the rights of the
parties in a claim for reimbursement and apply equitable principles to
determine whether to recognize the claim after considering the parties’
relative circumstances and, in appropriate circumstances, order a division of
the claim for reimbursement in a manner that is just and right.  Tex. Fam. Code Ann. § 7.007(b)(1), (2)
(Vernon 2009); see Hailey, 176 S.W.3d at 384–85.  Reimbursement is
within the trial court’s discretion, but is not available as a matter law.  Vallone,
644 S.W.2d at 459.  The discretion to be exercised in evaluating a claim
for reimbursement is equally as broad as the discretion exercised in making a
just and right division of the community estate.  Penick, 783 S.W.2d at 198. 
If there is some evidence of substantial and probative character to support the
trial court’s award, an abuse of discretion does not occur.  Zieba, 928
S.W.2d at 787.

Enhancement value is the measure of reimbursement
whether the situation involves payment on behalf on an estate, as in this case,
or a capital improvement to an estate.  See Penick, 783 S.W.2d at 197; Zieba,
928 S.W.2d at 788.  A claim for reimbursement may be offset as the trial court
deems appropriate by considering the benefits and detriments to each estate.  Gutierrez
v. Gutierrez, 791 S.W.2d 659, 663 (Tex. App.—San Antonio 1990, no writ).  In
evaluating the merits of a claim for reimbursement, a trial court should
consider all the facts and circumstances to arrive at a determination that is
fair, just, and equitable.  See Penick, 783 S.W.2d at 197; Hailey,
176 S.W.3d at 384.  A trial court may not simply return to the
contributing estate the actual amount advanced without regard to the benefits
received.  See Penick, 783 S.W.2d at 197.  Likewise, the court must
ensure that the benefitted estate is not required to pay more in reimbursement
than the amount by which it benefitted.  See Gutierrez, 791 S.W.2d at
663.

The record reflects that for a period of three years
and three months following Rickey’s incarceration, Katrina paid $515.25 for the
home equity loan and $80.00 for home insurance on a monthly basis.  Katrina
also paid annual taxes of approximately $1,600 to $1,700 during this time.  It
is undisputed that, when tallied, these expenses for the home totaled about
$737 each month.  Katrina testified that she made these payments on the home and
paid property taxes with money taken from her 401(k) account and sold items to
maintain payments on the home when Rickey was incarcerated.  It is undisputed
that Rickey did not make any payments towards the home during his incarceration. 
The trial court awarded Katrina $425 for the 39-month period of Rickey’s
incarceration through the trial and awarded $425 for an additional six months
until Katrina moved or the home was sold.  Because reimbursement is an
equitable remedy within the trial court’s discretion, sufficient evidence
exists to support the reimbursement award to Katrina.  See Vallone, 644
S.W.2d at 459.  On this basis, Rickey has not demonstrated that the trial court
abused its discretion or that the reimbursement to Katrina was unjust.  See Penick,
783 S.W.2d at 197 (providing that enhancement value may be measured by one
estate’s payment on another estate); Hailey, 176 S.W.3d at 385.  We
overrule Rickey’s first issue.

Rickey also asserts that the trial court failed to
offset the reimbursement to Katrina by the benefits Katrina actually received. 
He refers to the fact that Katrina paid roughly $737 each month for
home-related expenses, but that she would have paid $600 had she rented a
different home.  According to Rickey’s calculations, based on an offset and
these facts, Katrina should have received only $137 for each month for her
reimbursement claim.  Presuming that Rickey requested an offset, the evidence
suggests that the trial court did not abuse its discretion in its award to
Katrina.  See Hailey, 176 S.W.3d at 384 (providing that a trial court is
required to consider offsetting benefits when a party requests such relief); Gutierrez,
791 S.W.2d at 663.

The trial court’s findings of fact and conclusions of
law do not specifically mention offsets, but the trial court addressed
reimbursement to the community estate.  Therefore, we may infer omitted
findings in support of the trial court’s judgment.  See Tex. R. Civ. P. 299; Hailey, 176
S.W.3d at 384.  The trial court entered the following findings:

·       
The monthly payment for the home equity loan was $515.25.

·       
The monthly cost of homeowner’s insurance on the home was
approximately $80.

·       
Ad valorem taxes on the home were no more than $1,700 each year.

The trial court did not award
Katrina these same figures for reimbursement.  See Penick, 783 S.W.2d at
197 (rejecting notion that reimbursement involves balancing out ledgers).  Instead,
the trial court ordered reimbursement of $425 to the community estate for each
month during the same 39-month period and additionally awarded Katrina $425 each
month for an additional six months until the home was sold or she moved.  It is
not clear how the trial court determined the reimbursement amount; however, it
is clear that the trial court reasonably concluded that there was some
offsetting benefit to Rickey.  See Zieba, 928 S.W.2d at 788.  After
considering the facts and the parties’ circumstances, the trial court could
have determined that the reimbursement awarded to Katrina was fair, just, and
equitable.  See Hailey, 176 S.W.3d at 387; Zieba, 928 S.W.2d at
788 (overruling claim to reverse reimbursement).  We therefore overrule
Rickey’s second issue.

Having overruled each
of Rickey’s live issues on appeal, we affirm the trial court’s judgment.

 

                                                                                    

                                                                        /s/        Kem
Thompson Frost

                                                                                    Justice

 

 

 

Panel consists of
Justices Frost, Boyce, and Sullivan.